UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

ROSE MARY MORGAN, Individually and )
as the Administratrix of the Estate of )
Clifford Morgan, )
)  Civil No. 09-91-GFVT
     Plaintiff, )
)
V. )  **MEMORANDUM OPINION**
)  **&**
CABELA'S INC. and NORTH STARR )  **ORDER**
TREESTANDS, INC., )
)
     Defendants.

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on Cabela's Inc.'s Motion for Summary Judgment. [R. 28.] Therein, Cabela's argues that it is protected from liability under K.R.S. 411.340, the Kentucky Middleman Statute. Whether Cabela's created an express warranty is a genuine issue of material fact, and for this reason the Court will deny summary judgment.

**I**.

Clifford Morgan purchased a hunting tree stand from a Cabela's catalog. The tree stand was manufactured by North Starr Treestands, Inc. On November 5, 2006, while Mr. Morgan was using the tree stand, the stand allegedly broke, causing him to fall to his death. Rose Morgan has brought suit against both Cabela's and North Starr, claiming that the stand was defective and that both companies are liable under theories of strict liability, negligence, breach of warranty, and failure to warn. Cabela's filed a motion for summary judgment claiming it is

protected from liability because it is a mere seller, or "middleman." A Kentucky statute addresses this defense:

> In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, upon his showing by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package, or in the same condition such product was in when received by said wholesaler, distributor or retailer, shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, *unless such wholesaler, distributor or retailer, breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer*.

K.R.S. 411.340 (emphasis added). Morgan argues that Cabela's is not entitled to the protection of the statute because 1) the manufacturer is not subject to the jurisdiction of the court and 2) Cabela's breached an express warranty. [R. 30.] Morgan also argues that summary judgment should not be granted because the motion was premature and "there are issues in this case with the manufacturer yet to be flushed out in discovery." [*Id*.]

Pursuant to Federal Rule of Civil Procedure 56©, summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In reviewing a motion for summary judgment, the court

"must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Browning v. Dept. of Army*, 436 F.3d 692, 695 (6th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 495 U.S. 574, 587 (1986)).

## II.

Morgan argues that summary judgment is inappropriate because she has not had adequate time for discovery. [R. 30 at 4.] Morgan cites *Jefferson v. Chattanooga Pub. Co.*, 375 F.3d 461 (6th Cir. 2004) for the proposition that summary judgment should not be granted if the non-moving party has not had enough time to engage in discovery. [R. 30 at 4.] In *Jefferson*, the Sixth Circuit held that a motion for summary judgment may be made anytime, as long as the non-moving party has had "sufficient time to engage in discovery." *Id*. at 463. The court also held that where the motion was filed six months after the defendant filed its answer, the non-moving party had plenty of time to engage in discovery, and ruling on a motion for summary judgment was appropriate. *Id*. The case at hand was filed in Leslie Circuit Court in August of 2007 and was removed to this Court in March of 2009. Cabela's moved for summary judgment in June of 2010– three years after Morgan filed suit and one year after the case was removed to federal court. Accordingly, the Court holds that Morgan has had sufficient time for discovery, and ruling on the motion for summary judgment at this time is appropriate.[1]

Next, Morgan argues that Cabela's cannot take advantage of the Kentucky Middleman Statute because the manufacturer of the tree stand is not subject to the jurisdiction of this Court.

---

[1] On March 1, 2011, ten months after Cabela's filed its motion for summary judgment, Morgan asked the Court for leave to file a supplemental response based on new information it obtained in discovery [R. 58.] Because the Court is denying Cabela's motion, it will deny Morgan's motion as moot.

For a seller (or "middleman") to take advantage of the protection of the statute, the manufacturer of the product must be identified and "subject to the jurisdiction of the court." K.R.S. 411.340. Specifically, Morgan argues that this Court does not have personal jurisdiction over North Starr, a citizen of Michigan. [R. 30.] This strikes the Court as an odd argument for a *plaintiff* to make. Morgan is the one who named North Starr in her suit and decided to file in Kentucky. Presumably she did this because she believed Kentucky courts have jurisdiction over the named defendants. Lack of personal jurisdiction is used as a defense and is raised by *defendants*— not by a plaintiff who is the master of where to file suit. By signing the complaint, plaintiff signified her good faith belief that seeking relief against the defendant in Kentucky was (and is) proper.

Morgan cites *Turpin v. Stanley Schulze and Company, Inc*., 2009 WL 875218 (Ky. Ct. App. 2009) in support of her argument that the Court does not have personal jurisdiction over North Starr. *Turpin* also involved the Kentucky Middleman defense. There the court held that the statue was inapplicable to the seller because the manufacturer could not be brought before the court due to lack of personal jurisdiction. *Id*. at *4. In *Turpin*, however, the plaintiff did not name the manufacturer as a defendant in the suit. Additionally, the manufacturer was Taiwanese. *Id*. at *1. Here, Morgan has named the manufacturer and that manufacturer, a citizen of this country and this circuit, is properly before the Court.

Morgan's stated concern that, "[s]hould [she] obtain a judgment against the manufacturer in this court, and then go to Michigan and attempt to collect the judgment, it would be subject to attack due to lack of jurisdiction by the Kentucky Courts" is unfounded, as North Starr has waived any argument that this Court does not have personal jurisdiction over it by not raising the defense in its answer. Fed. R. Civ. P. 12(h) provides that the defense of lack of personal

4

jurisdiction may be waived if not made in the first responsive pleading. North Starr filed an answer in state court [R. 59-6] but did not object to personal jurisdiction in its answer, and thus has waived the objection. *See Taubman Co. v. Webfeats*, 319 F.3d 770, 773 ("Although subject matter jurisdiction can be raised at any time, even collaterally after disposition, a challenge to personal jurisdiction must be raised in the first responsive pleading or be waived.") (citations omitted).

Next, Morgan argues that the Kentucky Middleman Statute does not apply because Cabela's breached an express warranty. [R. 30.] Cabela's denies that it made an express warranty. [R. 31.] An express warranty is "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." K.R.S. 355.2-313.

> It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

*Id*. Morgan argues that Cabela's expressly warrants that the goods it sells are safe and reliable by including a "Dear Friends" letter from Dick and Jim Cabela in the front of every catalog that elaborates on the slogan, "Field-tested, Field Proven." Morgan does not claim to provide the exact letter contained in the catalog from which her husband ordered the tree stand, but instead states that "[t]he exact wording of the letter or statement in each catalog is different from time to time, but the meaning and warranty is always the same."

Morgan attaches three different examples to her response that she claims are warranties. One example states:

> [W]e know every time you venture to some remote campsite or motor out on the water far from shore, you're trusting your gear, tackle and clothing to make that outing safe and successful. At Cabela's it's that trust that motivates us to offer only the finest field-tested, field-proven products. Every year, our veteran team of dedicated pros and committed experts puts our products to the test in the same places and under the same conditions that you'll use them long before they're made available to you. It's our way of ensuring we only offer products you can count on. Products you can trust.

[R. 30, Attach.10.] Although Morgan refers generally to these alleged warranties as "letters," only this example appears to be a letter. The other examples Morgan provides are not signed by the Cabela's and appear to be only advertisements. The first ad provides in part, "Before any product reaches our shelves, it's carefully pried from our field-testers' hands. Field-testing is a way of life at Cabela's. It's the only way to make sure everything in our proven selection of quality gear lives up to our high expectations." [R. 30, Attach. 11.] The second provides, "At Cabela's, developing, testing and evaluating gear is a big part of what we do every day. It's our job to make sure the products we sell live up to your expectations. For us, that's business as usual." [R. 30, Attach. 12.]

A catalog or advertisement may create an express warranty in certain circumstances. *Overstreet v. Norden Laboratories, Inc.*, 669 F.2d 1286, 1290 (6th Cir. 1982). The test is "whether the seller assumes to assert a fact of which the buyer is ignorant, or whether he merely states an opinion or expresses a judgment about a thing as to which they may each be expected to have an opinion and exercise a judgment." *Id*. (citing *Wedding v. Duncan*, 310 Ky. 374, 378 (Ky. 1949)). Every statement made by a seller does not necessarily create an express warranty. There is a difference between mere sales talk, or "puffing," and an express warranty. *Id.* If a seller is merely expressing his opinion or commendation of the goods, this is typically puffing and does not create an express warranty. *Id*. Distinguishing between puffing and an express

warranty is a fact intensive analysis that depends on the "particular circumstances in which the language is used and read." *Id*. Thus, whether an express warranty was created is generally a question for the trier of fact. *Moore v. Mack Trucks, Inc*., 40 S.W.3d 888, 891 (Ky. Ct. App. 2001).

Several factors suggest that these letters and advertisements may not amount to express warranties. First, the statements are general rather than specific, in that they relate to all of Cabela's goods and not specifically to the tree stand. Express warranties are most often found when a seller makes a specific statement about a specific product. *See Moore*, 40 S.W.3d 888, 891 (seller's statements, made in response to a buyer's concerns about a truck's transmission, that the transmission had been "completely redone by Mack" could be construed as an express warranty). In the case at hand, Cabela's statements could be read generally as, "We are a good company. We sell good products." This, of course, would be puffing.

Next, it is not clear that the advertisements and letters included in the catalog actually became part of the basis of the bargain. "A warranty is the basis of the bargain if it has been relied upon as one of the inducements for purchasing the product." *Overstreet*, 669 F.2d at 1290. Morgan has submitted an affidavit which states:

> Affiant and her deceased husband were well familiar with these catalogs and would never have purchased a tree stand from a catalog except they knew Cabela's was the world's greatest outfitter and knew Cabela's stood behind its products warranting them to be safe and dependable....Without these kinds of express representations from Cabela's, the tree stand would not have been purchased from a catalog company.

[R. 30.] For a warranty to become the basis of the bargain, the plaintiff must show that he or she actually read the warranty before making the purchase in question. *Interco Inc. v. Randustrial Corp*., 533 S.W.2d 257, 262 (Mo. Ct. App. 1976); *Jarett v. Duro-Med Industries*,

7

2008 WL 89932, at *9 (E.D. Ky. 2008).  While it is clear from the affidavit that the plaintiff relied on Cabela's good name before purchasing the product, the affidavit does not state whether Morgan actually read one of the ads or letters *before* buying the tree stand.  Nor does it state whether the ad or letter– not just the catalog and good reputation of Cabela's – induced the sale of the tree stand.  A vague familiarity with "the catalogs" and reliance on Cabela's as the "world's greatest outfitter" are not enough to demonstrate that those statements became part of the basis of the bargain.

Morgan does state that "they [she and the decedent] knew...Cabela's stood behind its products warranting them to be safe and dependable" and that "[w]ithout these kinds of express representations...the tree stand would not have been purchased from a catalog company." [R. 30.] As the non-moving party, Morgan need only demonstrate a genuine issue of material fact, and all doubts must be resolved in her favor.  Because there are also several factors weighing in her favor, the Court cannot say that the evidence is so one-sided that Cabela's must prevail as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  For example, the Kentucky Court of Appeals has held that a "positive affirmation, accompanied by the assurance that the seller is 'behind it,' constitutes an express warranty."  *Wedding*, 220 S.W.2d 564 (Ky. Ct. App. 1949) (citations omitted).

In the case at hand, Cabela's advertises that it field-tests all of the products it sells before sending them to the customer.  It advertises, "Every year, our veteran team of dedicated pros and committed experts puts our products to the test in the same places and under the same conditions that you'll use them long before they're made available to you.  It's our way of ensuring we only offer products you can count on.  Products you can trust." [R. 30, Attach. 10.]  A reasonable jury

could find that these statements are Cabela's way of saying it stands behind its products. The purpose of the Kentucky Middleman Statute is to protect middlemen who "merely sell" another manufacturer's products. *Parker v. Henry A. Petter Supply Co.*, 165 S.W.3d 474 (Ky. Ct. App. 2005). A reasonable jury could find that by independently testing the products before sending them to customers, Cabela's became more than a mere seller. At this point in the litigation, considering the evidence in the light most favorable to the non-moving party and because the existence of an express warranty is generally a question of fact, the Court cannot grant summary judgment.

**III.**

Accordingly, and being sufficiently advised, Cabela's Motion for Summary Judgment [R. 28] is **DENIED**. Additionally, Morgan's Motion for Leave to File Supplemental Memorandum [R. 58] is **DENIED AS MOOT**.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge